UNITED STATES of America,
Appellant,

v.

Henry HELSTOSKI.

Henry HELSTOSKI, Petitioner,

v.

UNITED STATES of America,
Respondent,

Honorable H. Curtis Meanor, United
States District Judge, Nominal
Respondent.

Nos. 77–1423, 77–1800.

United States Court of Appeals,
Third Circuit.

Argued Oct. 6, 1977.

Decided April 13, 1978.

Morton Stavis, Louise Halper, Newark, N. J., for appellee in No. 77–1423 and petitioner in No. 77–1800.

Jonathan L. Goldstein, U. S. Atty., Robert Beller, Asst. U. S. Atty., Barry Ted Moskowitz, Maryanne T. Desmond, Asst. U. S. Attys., Newark, N. J., for appellant in No. 77–1423 and for respondent in No. 77–1800.

Before SEITZ, Chief Judge, and STALEY and HUNTER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Henry Helstoski ("defendant") a former United States Congressman, petitions for a writ of mandamus to compel the district court to dismiss Counts I–IV of a pending indictment against him. He seeks dismissal on the grounds, inter alia, that those counts contravene the Speech or Debate Clause of the United States Constitution. That Clause provides that "[t]he Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other Place." *U.S. Const.* art. I, § 6.

In a separate appeal arising from this prosecution of defendant, the Government challenges a pretrial order of the district court forbidding the Government to introduce during its case-in-chief "evidence of the performance of a past legislative act on the part of the defendant, Henry Helstoski, derived from any source and for any purpose." *United States v. Helstoski,* No. 76–201 (D.N.J., Feb. 23, 1977) (pretrial order).

The defendant was indicted along with several other persons in June of 1976 by a grand jury in New Jersey. At the time of the indictment, and at all times during which the indictment charged that the defendant violated the law, the defendant was a Member of Congress representing the Ninth Congressional District in New Jersey.

Count I charges the defendant with violation of the conspiracy statute, 18 U.S.C. § 371 (1976). The count alleges that while he was a Member of Congress the defendant conspired to violate the official bribery statute, 18 U.S.C. § 201(c)(1),[1] by acting with others to solicit and obtain bribes from resident aliens in return for being influenced in the performance of official acts to benefit those aliens.

The conspiracy count defined the official acts for which bribes allegedly were paid to defendant as being "the introduction of private bills in the United States House of Representatives." In addition, four of the sixteen overt acts set out in Count I alleged that the defendant introduced specific bills into the House to benefit specific individuals. For example, Overt Act 13 charged that "[o]n or about September 6, 1973, the defendant, HENRY HELSTOSKI, introduced a private bill in the United States House of Representatives for Luis and Maria Echavarria."

Counts II–IV charged the defendant with substantive violations of 18 U.S.C. §§ 201(c)(1) & (2) (1976).[2] Each count alleged that while a Congressman the defendant solicited and agreed to receive payments from specified aliens in return for being influenced in the performance of official acts. Each count specified the official acts at issue. For example, Count IV charged:

From on or about January 11, 1975, to on or about January 18, 1975, in East Rutherford, New Jersey, the defendant, HENRY HELSTOSKI, directly and corruptly asked, demanded, solicited, sought and agreed to receive cash payments from Luis and Maria Echavarria in return for his being influenced in the performance of an official act, to wit: the introduction of a second private bill in the United States House of Representatives on behalf of Luis and Maria Echavarria, which private bill was introduced by the defendant, HENRY HELSTOSKI, on January 27, 1975.

This indictment grew out of a complex investigation by several federal grand juries in New Jersey into allegations of political corruption and fraud in immigration matters. These investigations continued for several years, and thus far have resulted in several indictments and convictions, including those of the defendant's former administrative assistant and the defendant's brother.

---

1. 18 U.S.C. § 201 (1976) provides in pertinent part:
 (a) For the purpose of this section:
 "public official" means Member of Congress . . . ; and

 . . . . .

 "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in his official capacity, or in his place of trust or profit.

 . . . . .

 (c) Whoever, being a public official or person selected to be a public official, directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself or for any other person or entity, in return for:
 (1) being influenced in his performance of any official act; or
 (2) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud on the United States;

 . . . . .

 Shall be [guilty of an offense].

2. See note 1, *supra.*

During these investigations the defendant appeared before eight different grand juries on ten separate occasions from April of 1974 until May of 1976. He testified and produced documents both voluntarily and in response to subpoena. That testimony and those documents concerned a variety of issues, including the defendant's personal finances and spending habits, as well as concerning the introduction of private bills by the defendant.

The defendant testified before these grand juries voluntarily and in detail about his introduction of private immigration bills. He described his motive for introducing the bills. He testified about the procedures by which he presented the bills to the House and to the proper committees, and he detailed how his office dealt with private bill requests. He ·also testified about his own investigation into allegations of fraud in connection with the bills.

In addition the defendant produced for the grand juries voluminous correspondence and files relating to the private bills at issue. The documents produced by defendant included copies of the bills themselves.

The defendant also testified and produced documents about these private bills when he testified in the trial of his former administrative assistant, Albert DeFalco, on October 15, 1975.

Prior to his first appearance before a grand jury in April, 1974, and upon each subsequent appearance, the Government told the defendant that he could refuse to answer questions or produce documents if he believed that to do so might incriminate him. The Government warned him that any information he did offer could be used against him. Upon each occasion the Government also informed the defendant that he had the right to confer with legal counsel and that an attorney would be provided for him if he could not afford one.

At no time did the Government speak to the defendant about his rights under the Speech or Debate Clause. And though the district court found that when the defendant first appeared before the grand jury he knew of his Speech or Debate privilege as a result of other unrelated litigation,[3] it was not until the defendant's final appearance before the grand jury on May 14, 1976, that the defendant asserted his Speech or Debate Clause privilege in refusing to answer the grand jury's questions. The defendant did not testify about, or produce documents concerning, legislative acts subsequent to the May 14, 1976, assertion of privilege.

After the district court severed those eight counts in the indictment that named only Helstoski as a defendant, the defendant moved to dismiss Counts I–IV on the ground they contravened the Speech or Debate Clause in that they called legislative acts into question. Alternatively, the defendant sought dismissal on the ground that the indictment was invalid because the grand jury heard evidence in violation of the Speech or Debate Clause.

The Government opposed the motion on the grounds that the Speech or Debate Clause did not invalidate the indictment and that, in any event, the defendant had waived his Speech or Debate rights by voluntarily testifying before the grand jury.

The district court denied defendant's motion in a bench opinion. *United States v. Helstoski*, No. 76–201 (D.N.J., Feb. 1, 1977) (bench opinion). The court rejected the Government's waiver argument and it held that the indictment was not inconsistent with the Speech or Debate Clause. The court also held that the Speech or Debate Clause prohibited the Government from proving during its case-in-chief the performance of any past legislative act by the defendant.

The Government then filed a motion with the district court seeking specific rulings on whether 23 categories of evidence would be admissible at trial. The categories com-

---

3. In *Schiaffo v. Helstoski,* 492 F.2d 413 (3d Cir. 1974), the defendant relied upon his Speech or Debate privilege in defending a civil suit alleging abuse of the franking privilege. The attorney who represented defendant in *Schiaffo* also represented him when he appeared before the various grand juries.

prised evidence of actual bills introduced by defendant, evidence of payments to defendant, and evidence of conversations and correspondence that referred to the introduction of the private bills at issue.

The Government renewed its waiver argument in support of these offers of proof. Alternatively, it urged the district court to find the offers admissible on the grounds they were offered to prove defendant's purpose and intent in agreeing to accept the bribe, and not offered to question legislative acts.

After oral argument on the Government's offer of proof the district court issued a written opinion. That opinion also set forth the court's prior oral rulings on defendant's earlier motion to dismiss. *United States v. Helstoski*, No. 76–201 (D.N.J., Feb. 22, 1977) (unpublished opinion). The court said again that it believed the indictment valid under the Speech or Debate Clause, and refused to dismiss the first four counts. The court repeated its holding that the defendant had not waived his privilege, since there had been no express waiver of the type the district court believed was required by the important principles supporting the Speech or Debate privilege.

In response to the Government's offer of proof the district court restated its prohibition on proving any past legislative acts. It found it unnecessary to rule specifically on any of the 23 proffered categories, but held the Speech or Debate Clause to be an absolute bar to the introduction into evidence of legislative acts for any purpose.

On February 23, 1977, the district court issued an order embodying its judgment on the motions before it. It denied the defendant's motion to dismiss, and stated the limitations on the presentation of evidence of legislative acts:

> The United States may not, during the presentation of its case-in-chief at the trial of the above Indictment, introduce evidence of the performance of a past legislative act on the part of the defendant, Henry Helstoski, derived from any source and for any purpose.

*United States v. Helstoski*, No. 76 -201 (D.N.J., Feb. 23, 1977) (pretrial order).

The Government timely appealed from the February 23, 1977, order, asserting that this court has jurisdiction over the appeal under 18 U.S.C. § 3731 (1976). On June 17, 1977, the defendant petitioned this court for a writ of mandamus directing the district judge to dismiss the first four counts of the indictment. The cases were consolidated for disposition.

I.

## DEFENDANT'S PETITION FOR A WRIT OF MANDAMUS

The defendant invokes the jurisdiction of this court under the All Writs Act, 28 U.S.C. § 1651 (1970), seeking a writ of mandamus to compel the district judge to dismiss the four counts of the indictment charging defendant with agreeing to accept money in return for promising to perform legislative acts.

Defendant argues that his entitlement to the writ is clear. He argues that for the district court to try him on this indictment would violate the Speech or Debate Clause and thus would constitute a clear abuse of judicial power. In addition the defendant argues that since the Speech or Debate Clause protects against the burden of defending charges brought in violation of its provisions as well as against conviction for such charges, his rights under the Clause will be infringed if he is forced to defend against the indictment and then appeal from a post-verdict judgment. In these circumstances defendant believes that his right to issuance of the writ is clear and indisputable.

The Government, of course, does not agree. It argues that this Court is without jurisdiction to grant the writ since defendant merely seeks reversal of a routine refusal by the district court to dismiss counts of an indictment. In addition to opposing on the merits each justification asserted by defendant in support of the petition, the Government also argues that the petition should be denied as untimely, or else denied

on the ground that defendant waived his Speech or Debate privilege by voluntarily testifying before the grand jury about his legislative acts.

### A.

The All Writs Act empowers the Courts of Appeals to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (1970).

■ The Act has been read to grant us jurisdiction to issue a writ of mandamus where the underlying proceeding is one either actually or potentially within our appellate jurisdiction. Since the prosecution of this defendant for the violation of federal bribery laws is a case potentially within our appellate jurisdiction, we have the jurisdiction to grant the writ defendant seeks. "Hence the question presented on this record is not whether [we have] power to grant the writ but whether in the light of all the circumstances the case [is] an appropriate one for the exercise of that power." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 25–26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943).

The Supreme Court recently has emphasized that, in determining when it is "appropriate" to issue the writ we must keep in mind that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court*, ·426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976).

Generally, federal courts have used the writ "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), *quoted in Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976). And while the Supreme Court in *Kerr* noted that it had "not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of 'jurisdiction,'" the Court stressed that the writ should issue only in

extraordinary situations: "the fact still remains that 'only exceptional circumstances amounting to a judicial "usurpation of power" will justify the invocation of this extraordinary remedy.'" *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976), *quoting Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

■ In order to further the congressional determination that appellate review should come only after final judgment except in the most exceptional circumstances, the courts also have required that even where circumstances amount to a "judicial usurpation of power," the petitioner must satisfy certain other conditions for issuance of the writ. Thus, the party seeking the writ must have no other adequate means to attain the relief he seeks. And petitioner also must show that his right to issuance of the writ is clear and indisputable. *Id.* 426 U.S. at 403, 96 S.Ct. at 2124.

Finally, "it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed." *Id.*

In light of these principles we examine the grounds asserted by defendant in support of his petition in order to determine if issuance of the writ is appropriate in this case.

### B.

Defendant first argues that the district court is without jurisdiction to try the defendant because the indictment charges him with legislative acts. Apparently, the defendant believes that the specific references to the introduction of private bills in the first four counts establish that this indictment is actually one charging the defendant with the performance of legislative acts and so violates the Speech or Debate privilege.

The defendant distinguishes this indictment from those at issue in *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), and *United States v. Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15

L.Ed.2d 681 (1966). Defendant asserts that in those cases the indictments did not charge specific legislative acts, and so did not require proof of such acts. In this case, however, the defendant believes that mention of specific legislative acts shows that the indictment charges him with the performance of legislative acts. This indictment, defendant argues, depends upon proof that the defendant introduced into the House of Representatives the specified private bills, and so depends upon proof of acts privileged against such inquiry under the Speech or Debate Clause.

We do not believe that the indictment at issue in this prosecution is materially distinguishable from that upheld by the Supreme Court in *Brewster*. In *Brewster*, four counts charged the defendant with violating 18 U.S.C. § 201(c) by agreeing to accept money in return " 'for being influenced . . . in respect to his action, vote, and decision on postage rate legislation which might at any time be pending before him in his official capacity.' " *United States v. Brewster*, 408 U.S. 501, 525, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972). A fifth count charged Brewster with having agreed, in violation of 18 U.S.C. § 201(g), to accept money for official acts in respect to his action, vote, and decision on " 'postage rate legislation which had been pending before him in his official capacity.' " *Id.* at 527, 92 S.Ct. at 2545.

Though the *Brewster* Court recognized that the indictment charged the defendant with accepting bribes in connection with legislative acts themselves protected by the Speech or Debate Clause, it allowed prosecution under the indictment. It did so because neither the § 201(c) nor the § 201(g) charge required the proof of any specified legislative acts concerning the postage rate legislation to which the counts referred. The Court held that to make a prima facie case, all the Government was required to prove was the "corrupt promise for payment, for it is *taking* the bribe, not performance of the illicit compact, that is a criminal act" under §§ 201(c) and (g). *Id.* at 526, 92 S.Ct. at 2544. (emphasis in original).

Although the indictment alleges that the bribe was given for an act that was actually performed, it is, once again, unnecessary to inquire into the act or its motivation. To sustain a conviction it is necessary to show that [Brewster] solicited, received, or agreed to receive, money with knowledge that the donor was paying him compensation for an official act. Inquiry into the legislative performance itself is not necessary; evidence of the Member's knowledge of the alleged briber's illicit reasons for paying the money is sufficient to carry the case to the jury. *Id.* at 527, 92 S.Ct. at 2545.

■ We think *Brewster* compels the conclusion that the indictment in the case before us does not violate the Speech or Debate Clause. The grand jury charged the defendant with conspiracy to violate and with violation of §§ 201(c)(1) & (2): to establish a prima facie case, the government need not show any of the legislative acts for which the defendant allegedly accepted payments. As the Court said in *Brewster* :

> The illegal conduct is taking or agreeing to take money for a promise to act in a certain way. There is no need for the Government to show that [the defendant] fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise.

*Id.* at 526, 92 S.Ct. at 2544.

Since the allegations of the indictment charge a crime even without reference to any acts protected from inquiry under the Speech or Debate Clause, defendant has not made sufficient showing to justify issuance of the writ he seeks on Speech or Debate grounds. In so holding we express no opinion as to whether, or in what circumstances, mandamus might be appropriate to prevent trial of an indictment the sufficiency of which is dependent upon proof of materials embraced by the Speech or Debate Clause.

C.

The defendant also argues that the district court's order prohibiting the introduc-

tion by the government of any evidence of past legislative acts was an attempt by the district court to obtain jurisdiction over an indictment otherwise invalid under the Speech or Debate Clause. Defendant charges that in so modifying the proof to be permitted at trial the district court "constructively amended" the indictment, thereby depriving the defendant of his fifth amendment right to be tried only upon the indictment of a grand jury.

Though defendant is not entirely clear on this point, we understand him to argue that such a "constructive amendment" deprived the district court of jurisdiction, and justifies issuance of the extraordinary writ he seeks.

Our cases have found a "constructive amendment" of the grand jury's indictment where the trial court "permitted, in the guise of a variance . . . [modification of] the facts which the grand jury charged as an *essential element* of the substantive offense." *United States v. Crocker*, 568 F.2d 1049, 1060 (3rd Cir. 1977) (emphasis added). Thus, "we must test to see whether there is reasonable assurance from the face of the indictment that the grand jury found probable cause on each of the essential elements which [will] underlie the verdict of the petit jury." *United States v. Goldstein*, 502 F.2d 526, 529 (3d Cir. 1974) (in banc).

■ The district court's evidential ruling in this case does not modify the proof of any essential elements of the crime with which the defendant is charged. *Brewster* makes it clear that proof of legislative acts is not essential to a charge of official bribery under § 201(c). A prima facie case may be established under that statute without any showing of legislative acts on the part of the defendant. Accordingly, the district court's evidential limitation did not modify the proof of an essential element of the offense from that found by the grand jury.

In these circumstances, we do not believe that the district court's order constituted a "constructive amendment" of the indictment. The proofs supporting the essential elements of the crime charged have not

been modified from those considered and found sufficient to support a finding of probable cause by the grand jury. The basic theory of the offense and the facts considered by the grand jury in charging that offense remain unaltered.

We thus do not believe defendant's "constructive amendment" argument entitles him to the writ of mandamus he seeks. In so holding we express no opinion as to whether or in what circumstances the "constructive amendment" of an indictment might justify issuance of such a writ.

### D.

Defendant's final argument in support of his petition is that the district court is without jurisdiction to try the indictment because the grand jury that returned it heard evidence in violation of the Speech or Debate Clause. The district court rejected this argument, holding that "courts simply will not go behind the face of an indictment, once it is returned, in order to test the competency of the evidence adduced before the grand jury." *United States v. Helstoski*, No. 76–201 at 4 (D.N.J., Feb. 22, 1977) (unpublished opinion).

Defendant argues, however, that presentation to the grand jury of evidence of defendant's legislative acts produced an indictment beyond the grand jury's power to return, and beyond the court's jurisdiction to try. Defendant apparently believes that the principle of separation of powers that supports the Speech or Debate privilege requires that the district court be prevented from even trying the defendant on this indictment.

The indictment, however, is valid on its face. It charges an offense for which defendant may be tried and convicted consistently with the principles of the Speech or Debate privilege.

Even in light of the expansive definition of "jurisdiction" that the Supreme Court has adopted in evaluating mandamus petitions, we do not believe that in these circumstances defendant's allegations concerning the grand jury make out " 'exceptional

circumstances amounting to a judicial "usurpation of power" [so as to] justify the invocation of this extraordinary remedy.'" *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976), *quoting Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). We conclude that the district court has jurisdiction to try the indictment returned against the defendant in this case, and accordingly refuse to grant the writ on grounds of grand jury abuse.

In *Roche v. Evaporated Milk Association*, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943), the Supreme Court similarly refused a petition for a writ of mandamus. There the petitioner sought to quash an indictment on the grounds that the grand jury that returned it had no power to hear the subject matter presented to it, since the grand jury's statutory power to hear the allegations against petitioner had expired before it returned an indictment against him.

The Court noted that the case before it, unlike a situation where it was alleged that an indictment had been amended by the court, involved "no question of the jurisdiction of the district court. Its jurisdiction of the persons of the defendants, and of the subject matter charged by the indictment" was not implicated by the petition. *Id.* at 26, 63 S.Ct. at 942. Moreover, the requisite number of duly qualified grand jurors had returned the bill. Accordingly, the writ was denied.

> The objection that the subject matter of the indictment was not one which the grand jury had been or could be continued to hear was at most an irregularity which, if the proper subject of a plea in abatement, did not affect the jurisdiction of the court.

*Id.* at 27, 63 S.Ct. at 942.

▇▇▇ Similarly, we do not believe defendant's allegations of grand jury abuse in this case question the jurisdiction of the court below. As established in *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits." *Id.* at 363, 76 S.Ct. at 409 (footnote omitted). Thus, we believe that in this case, the district court possesses jurisdiction to try the valid indictment returned by a competent grand jury. In such circumstances, we cannot hold that we must exercise our extraordinary powers under the All Writs Act to prevent a judicial usurpation of power.

Nor do we believe defendant's right not to be questioned for legislative acts will be lost by trial on this indictment. As we have decided, the Speech or Debate Clause does not bar trial of the defendant on these charges. Any argument that the important policies underlying the Clause require dismissal of an indictment returned by a grand jury that heard evidence in violation of the Clause's principles does not go to the jurisdiction of the district court, but to the proper means that this court should use to effectuate the Clause. As such, we believe it is an argument better left for decision on appeal from a final judgment.

We also note that it is far from "clear and indisputable" that defendant could prevail on his arguments that presentation to the grand jury of evidence in violation of the Speech or Debate Clause requires dismissal of the indictment. The Supreme Court consistently has refused to countenance challenges to the competency of evidence presented to a grand jury, holding that a valid indictment returned by a competent grand jury is enough to call for a trial. *United States v. Calandra*, 414 U.S. 338, 342–45, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

Moreover, in *United States v. Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), the Court allowed retrial of the conspiracy count even though it was clear from the specification of a legislative act in the overt acts supporting that conspiracy count that the grand jury heard the evidence that the Supreme Court held was barred at trial by the Speech or Debate Clause. And on appeal after the retrial, the Court of Appeals rejected Johnson's argument that the

indictment was invalid because of the presentation of evidence of legislative acts to the grand jury. *United States v. Johnson,* 419 F.2d 56, 58 (4th Cir. 1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1235, 25 L.Ed.2d 423 (1970). *See United States v. Blue,* 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).

### E.

■ Since we find that in the circumstances of this case it would not be appropriate for us to issue the extraordinary writ sought by defendant, we deny his petition. In light of this disposition, we need not reach the Government's argument that the petition should be dismissed as untimely. Nor need we address in this context the Government's argument that defendant waived his Speech or Debate privilege.

### II.

### THE GOVERNMENT'S APPEAL

The Government has appealed to this court from that portion of the district court's order of February 23, 1977, holding that the "United States may not, during the presentation of its case-in-chief at the trial . . . introduce evidence of the performance of a past legislative act on the part of the defendant, Henry Helstoski, derived from any source and for any purpose." *United States v. Helstoski,* No. 76–201 (D.N.J., Feb. 23, 1977) (pretrial order).

### A.

The defendant challenges our jurisdiction over the Government's appeal. The Government asserts that we have jurisdiction over its appeal under 18 U.S.C. § 3731 (1976), which reads in pertinent part:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [*sic*] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States

attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

18 U.S.C. § 3731 (1976).

The defendant argues that since the district court's order did not suppress or exclude any specific items of evidence, it was not the type of order encompassed by the statute. Rather, defendant argues, the district court's ruling was a general delineation of the impact of the Speech or Debate Clause on this prosecution. The defendant points to the failure of the district court to rule on any of the 23 offers of proof made by the Government as evidence that the district court simply was applying the principles of the Speech or Debate Clause and not excluding or suppressing evidence.

We note at the outset that § 3731 explicitly provides that "[t]he provisions of this section shall be liberally construed to effectuate its purposes." 18 U.S.C. § 3731 (1976). And as we recognized in *United States v. Beck,* 483 F.2d 203 (3d Cir. 1973), *cert. denied,* 414 U.S. 1132, 94 S.Ct. 873, 38 L.Ed.2d 757 (1974), the legislative history of the current version of § 3731 "states specifically, 'The phrase "suppressing or excluding evidence or requiring the return of seized property" should be read broadly.'" *Id.* at 206, *quoting S.Rep.No.*91–1296, 91st *Cong.,* 2d *Sess.* 37 (1970).

In *Beck,* the Government appealed from a district court decision holding that a magistrate erred in not suppressing certain evidence, and remanding for further proceedings before the magistrate consistent with that holding. The defendant argued that we had no jurisdiction over the appeal under § 3731, since the district court's remand order itself did not suppress or exclude evidence.

Stressing that "[t]he practical effect of the decision . . . is to suppress the evidence," and relying on the "congressional mandate that a 'suppression order' be liberally construed," we held that § 3731 gave us jurisdiction to hear the appeal. *Id.*

[W]e think allowing jurisdiction over this appeal is in harmony with the congressional purpose to permit appeals except where an ongoing trial would be interrupted.

*Id.*

In light of the congressional intent that we recognized in *Beck* that § 3731 be liberally construed, as well as in light of the statute's specific command, we believe the district court's order in this case fairly may be characterized as one "suppressing or excluding evidence." The practical effect of the district court's order is to prevent the Government from introducing evidence of defendant's past legislative acts that it otherwise almost certainly would have introduced at trial. Section 3731 was designed to allow appeals from such orders to insure that prosecutions are not unduly restricted by erroneous pre-trial decisions to exclude evidence.

Our holding is consistent with the approach to § 3731 taken by other Courts of Appeals in analogous situations. For example, in *United States v. Flores,* 538 F.2d 939 (2d Cir. 1976), the Government appealed under § 3731 from an order of the district court construing an extradition order of a foreign government. The district court read the order as prohibiting proof at trial of any acts or statements of the defendant's alleged co-conspirators if those acts or statements occurred prior to a certain date specified in the extradition order.

The defendant attacked the jurisdiction on appeal of the Court of Appeals. He argued that the order below "did not constitute a suppression or exclusion of evidence within the meaning of § 3731 but instead 'involved an order delineating the permissible scope of acts for which [the defendant] could be prosecuted.'" *Id.* at 943, *quoting* Brief for Appellee at 10.

The appellate court, however, held that § 3731 conferred jurisdiction to hear the appeal. The court noted that the Government sought to introduce the evidence that the district court believed to be prohibited by the extradition order to prove the existence of a conspiracy during a subsequent period.

The district court's orders, therefore, necessarily constitute evidentiary rulings that determine the manner in which such a crime may be proven. Section 3731 expressly affords jurisdiction in such an instance.

*Id. Accord, United States v. Battisti,* 486 F.2d 961, 965–67 (6th Cir. 1973); *see United States v. Craig,* 528 F.2d 773, 774, *cert. denied,* 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796, *vacated and decided in banc without reference to this issue,* 537 F.2d 957 (7th Cir.) (in banc), *cert. denied,* 429 U.S. 999, 97 S.Ct. 526, 50 L.Ed.2d 609 (1976).

■ We have jurisdiction under 18 U.S.C. § 3731 to hear the Government's appeal.

### B.

The Government argues that it should be permitted to introduce the private bills themselves and correspondence and conversations referring to defendant's legislative acts in order to prove the purpose of defendant in accepting the payments at issue.

In support of this contention, the Government argues that while the decision in *Brewster* forbids inquiry into the legislative process, it allows inquiry into the purpose for taking a bribe, even though that purpose is related to legislative acts. Since the Government seeks to introduce evidence of defendant's legislative acts solely to prove defendant's purpose in taking the bribe, and not in order to inquire into the legislative process itself, it believes *Brewster* permits the introduction of such evidence in this case.

Further, the Government argues that correspondence and conversations of the defendant are not themselves legislative acts, and so are not protected by the Speech or Debate privilege. Accordingly, the Government believes it may use such correspondence and conversation to prove the defendant's purpose in accepting the bribes, notwithstanding that they contain references to past legislative acts.

We agree with the district court that the Government misconstrues the meaning of

the Speech or Debate Clause as set out in *Brewster.* It is true that *Brewster* did not foreclose the showing of the purpose in taking the bribe. But the Supreme Court in *Brewster* made it clear that such purpose could be shown without inquiry "into how [defendant] spoke, how he debated, how he voted, or anything he did in the chamber or in committee." *United States v. Brewster,* 408 U.S. 501, 526, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972).

> Inquiry into the legislative performance itself is not necessary; evidence of the Member's knowledge of the alleged briber's illicit reasons for paying the money is sufficient to carry the case to the jury.

*Id.* at 527, 92 S.Ct. at 2545.

Indeed, in responding to fears expressed by the dissenters that it had gone too far in cutting back the Speech or Debate privilege, the Court emphasized that proof of legislative acts not only was not required under § 201(c), but was forbidden: "our holding in [*United States v.*] *Johnson* precludes any showing of how he acted, voted, or decided." *Id.* at 527, 92 S.Ct. at 2545 (emphasis added).

> The dissenting position stands on the fragile proposition that it "would take the Government at its word" with respect to wanting to prove what we all agree are protected acts that cannot be shown in evidence. Perhaps the Government would make a more appealing case if it could do so, but here, as in that case, evidence of acts protected by the [Speech or Debate] Clause is inadmissible.

*Id.* at 527–28, 92 S.Ct. at 2545.

In so holding, the Court in *Brewster* was relying on its earlier opinion in *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). There the Court allowed retrial of the conspiracy count at issue only upon the condition that the Government produce no evidence of any legislative acts. "With all references to [defendant's speech on the floor] eliminated, we think the Government should not be precluded from a new trial on this count, thus wholly purged of elements offensive to the Speech or Debate Clause." *Id.* at 185, 86 S.Ct. at 758.

■ Like the district court, we do not read *Johnson* and *Brewster* as prohibiting proof of legislative acts only where evidence of such acts is introduced as part of an inquiry into the legislative process itself. The Court has been clear in its prohibition of "any showing" of legislative acts, *United States v. Brewster,* 408 U.S. 501, 527, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), just as the Clause itself prohibits inquiry into "any speech or debate." Legislative acts may not be shown in evidence for any purpose in this prosecution.

Nor may the Government circumvent this clear requirement by introducing correspondence and statements that, though not legislative acts themselves, contain reference to past legislative acts of the defendant. To allow a showing by such secondary evidence could render *Brewster's* absolute prohibition meaningless. The Government would be able to prove any legislative act simply by producing non-privileged evidence containing some reference to that act. To allow proof of legislative acts in such a manner would reduce drastically the effectiveness of the Speech or Debate provision, and would discourage the dissemination to the public of information about legislative activities.

## C.

Finally, the Government argues that it should be permitted to introduce evidence of the defendant's legislative acts on the ground that defendant waived his Speech or Debate privilege by testifying before the grand jury about legislative acts.

The district court found it unnecessary to decide whether the Speech or Debate privilege is waivable by an individual member. Because the court believed the Clause to be an important part of the Constitutional machinery insuring separation of powers, it assumed without deciding that defendant could waive his protection under the Clause, and then held that proper judicial deference to the legislative branch required that "a waiver may be found only where it has

been clearly demonstrated that a legislator has expressly waived his Speech or Debate immunity for the precise purpose for which the Government seeks to use evidence of his legislative acts." *United States v. Helstoski,* No. 76–201, at 16 (D.N.J., Feb. 22, 1977) (unpublished opinion).

Though in the circumstances of this case the district court found that defendant was aware of his Speech or Debate privilege when he voluntarily testified about legislative acts before the grand jury, it held that the defendant had not expressly waived his Speech or Debate rights in the manner the court believed required.

The Government maintains on appeal that the defendant possessed the power to waive his Speech or Debate privilege. Moreover, the Government argues that the district court erred in requiring an express waiver. Since the privilege is not related to the fairness of the criminal proceeding, the Government argues that a voluntariness standard should govern waiver. Alternatively, the Government believes the defendant waived his privilege even under the express waiver standard required by the district court.

The question of whether an individual senator or representative may waive his Speech or Debate privilege is an open one. The history of the privilege at common law is not conclusive on this point, and the American authorities conflict. *Compare Coffin v. Coffin,* 4 Mass. 1, 27 (1808) *with T. Jefferson, Manual of Parliamentary Practice, reprinted in S.Doc.No.92–1, 92d Cong.,* 1st *Sess.* 431, 442 (1971); *cf. Gravel v. United States,* 408 U.S. 606, 622 n. 13, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *United States v. Brewster,* 408 U.S. 501, 529 n. 18, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

 Our view of the role played by the Speech or Debate Clause makes it unnecessary for us to decide this difficult and important question in this case. We agree with the district court that the Speech or Debate Clause's function as a protection for the legislative branch against encroachment by the executive and judicial branches precludes a finding of waiver in the context of

a criminal prosecution except where the member expressly forfeits his protection under the Clause for the purposes for which the Government seeks to use the evidence of his legislative acts.

The Government's attempt to analogize the Clause to other privileges where only a voluntariness standard is required misses the significance of the Clause. It is not a privilege against non-disclosure, as is the attorney-client privilege. Nor is it designed to insure the reliability of the evidence it protects, as does the rule preventing the introduction of coerced confessions. In each of those instances, voluntary waiver does not vitiate the purposes of the privilege. And a requirement of express waiver would not serve to further the policy underlying each privilege. *See In Re Grand Jury Proceedings (Appeal of Cianfrani),* 563 F.2d 577, 584 (3rd Cir. 1977).

Nor is the Speech or Debate Clause analogous to the fourth amendment exclusionary rule. Voluntary consent to search is permissible because that lesser standard does not work against the policy aims of the rule, i. e., the deterrence of police conduct that violates the fourth amendment.

 The Speech or Debate Clause is designed "to protect the integrity of the legislative process [and insure] the independence of individual legislators" by prohibiting the introduction into evidence of legislative acts. *United States v. Brewster,* 408 U.S. 501, 507, 92 S.Ct. 2531, 2535, 33 L.Ed.2d 507 (1972). To empower the judicial branch to find waiver upon any showing of less than an express relinquishment of the privilege would be in conflict with this purpose by creating the potential for judicial and executive encroachment on constitutionally protected legislative prerogatives in situations where the waiver of such prerogatives is not made expressly clear.

Out of deference, then, to a co-equal branch of government, we hold that even if an individual member may waive his Speech or Debate privilege—a question we do not decide—any waiver in the context of a criminal prosecution must be express and

for the specific purpose for which the evidence of legislative acts is sought to be used against the member.

On the facts of this case we find no such waiver. The Government argues that the defendant's decision to testify and produce documents after receiving general warnings that he had the right to refuse to answer incriminating questions, and after receiving warnings that his statements were being recorded for possible use against him, constitutes the requisite express waiver. We disagree. At no time did the defendant expressly waive his right under article I, section 6, the Speech or Debate Clause, to be free from inquiry into his legislative acts in this case.

### III.

### CONCLUSION

The defendant's petition for a writ of mandamus will be denied.

The judgment of the district court will be affirmed.