CITY OF DUBLIN et al., Appellees,

v.

The STATE of Ohio, Appellant.

[Cite as *Dublin v. State* (2000), 138 Ohio App.3d 753.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–615.

Decided Sept. 14, 2000.

*Schottenstein, Zox & Dunn, Stephen J. Smith, John P. Gilligan* and *Daniel M. Anderson,* for appellee city of Dublin; *Sharon Hunter Pfancuff,* City Attorney, and *Daniel A. More,* Assistant City Attorney, for appellee city of Upper Arlington.

*Betty D. Montgomery*, Attorney General, *Judith L. French* and *Elizabeth Luper Schuster*, Assistant Attorneys General, for appellant.

———————

DESHLER, Judge.

Defendant-appellant, the state of Ohio, has appealed from a decision and entry of the Franklin County Court of Common Pleas partially granting a motion by plaintiffs-appellees, the city of Dublin and the city of Upper Arlington, to compel discovery.

The underlying action in this case was brought by the plaintiff municipalities as a constitutional challenge to certain provisions of H.B. No. 283, the biennial budget bill enacted by the Ohio legislature in 1999. The provisions at issue reduce or eliminate the authority of municipalities to regulate use of public rights-of-way by public utilities and telecommunications operators, and limit the municipalities' authority to recover costs imposed upon them by such uses of public rights-of-way.

The appellees, through interrogatories and requests for production of documents, sought information related to meetings or other communication between representatives of the state, including members of the General Assembly and their staffs, and other parties, including representatives of utility service providers or cable operators. Appellees specifically sought through interrogatories to discover the source or basis of the language of the disputed enactments, the names of individual members of the General Assembly and third-parties who discussed the proposed legislation, the names of all individuals with knowledge of the public need for the disputed legislation, and the names of any persons with knowledge of the purpose of the enactment of the disputed legislation as part of the biennial budget bill. The interrogatories further sought to identify all persons who researched and reviewed legal issues pertaining to the legislation, including its constitutionality. Appellees' request for production of documents included "all documents relating to communications between representatives of the state of Ohio (including without limitation members of the General Assembly) with third parties (including without limitation representatives of utility service providers or cable operators) relating to the impact of municipal right-of-way regulation upon utility service providers and cable operators." (Appellees' request for production of documents, # 2.) Appellees also sought to compel the deposition of State Senator Louis Blessing, legislative sponsor of the disputed right-of-way provisions.

The state objected to various parts of the above discovery requests, relying on

Section 12, Article II of the Ohio Constitution,[1] the "Speech or Debate Clause" conferring legislative immunity upon members of the General Assembly. The trial court issued its discovery order on May 5, 2000, disposing of the state's motion for a protective order and appellees' motion to compel. The trial court's order granted both motions in part and denied both in part. The court held that both the common law and the Ohio Constitution provide state legislators with an absolute privilege protecting them from having to testify about their legislative conduct. The court accordingly denied appellees' motion to compel the deposition of Senator Blessing for the time being. The court's order further provided that any future attempt to depose legislators would not be permitted unless relevant topics could be identified that were outside the legislative privilege.

The court's discovery order, however, granted appellees' motion to compel in that it compelled certain narrowly circumscribed responses by the state to appellees' requests for information about meetings held off the public record by legislators or their staff with corporate representatives. The court initially found that the information sought by appellees was at least arguably relevant and therefore discoverable. The court then determined that private meetings with corporate representatives, held off the public record, were not "integral to the legislative process" and thus fell outside the scope of legislative privilege. The court therefore permitted limited discovery by appellees to the extent of requiring legislators and their staff to answer questions regarding the identities of any corporate representatives with whom they had met off the record to discuss the right-of-way statutes at issue. The court limited the proposed discovery to written interrogatories and barred any depositions of legislators or their staff until it could be shown that all other sources for discovering the information sought had been exhausted and that less burdensome forms of discovery were unlikely to provide the information. The court found that once the identities of corporate representatives were known, further discovery by appellees would be had from those representatives.

The state has timely appealed from the trial court's discovery order. Appellees have filed a motion to dismiss the appeal for lack of a final appealable order. Also before the court is appellees' motion to place the matter on the accelerated calendar for argument on the merits.

Appellees assert that the appeal must be dismissed because the discovery order at issue is interlocutory, and not a final appealable order as defined in R.C. 2505.02(B) and Civ.R. 54(B). Under R.C. 2505.02(B), an order is "final" if it (1)

---

1. "Senators and Representatives, during the session of the General Assembly, and in going to, and returning from the same, shall be privileged from arrest, and in all cases, except treason, felony, or breach of the peace; and for any speech, or debate, in either house, they shall not be questioned elsewhere."

grants or denies a provisional remedy, (2) determines the action with respect to the provisional remedy and prevents judgment in favor of the appealing party with respect to the provisional remedy, and (3) the appealing party would not have a meaningful or effective remedy on appeal after a final judgment in the case. R.C. 2505.02(B)(4)(a) and (b). A "provisional remedy" is defined as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence." R.C. 2505.02(A)(3). The provisions of the statute granting an immediate appeal from decisions addressing discovery of privileged matters are relatively recent, having been inserted by amendment in 1998, and not surprisingly the final appealable order issue before us constitutes a case of first impression in Ohio.

In arguing the motion to dismiss, the parties agree that the narrow issue before us may be defined as whether the limited information actually compelled to be disclosed by the trial court's discovery order (disclosure of the identities of corporate representatives who met with legislators concerning the legislation in question) is covered by legislative privilege. If this information is privileged, then the trial court's order falls within the scope of R.C. 2505.02(B)(4), since the court's order compels discovery. If the materials permitted to be discovered by the trial court are not privileged, then the discovery order is not one compelling discovery of privileged information, is not a final appealable order, and the motion to dismiss must be granted. In essence, we must find that the trial court erred in determining the scope of legislative privilege under the common law and Ohio Constitution. We find that it did not.

Ohio cases applying legislative privilege are primarily concerned with immunity from criminal prosecution or civil actions for defamation, rather than protection from compelled testimony or discovery. See, *e.g.*, *Costanzo v. Gaul* (1980), 62 Ohio St.2d 106, 16 O.O.3d 134, 403 N.E.2d 979; *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 21 O.O. 471, 37 N.E.2d 584; *Executone of Northwest Ohio v. Mgt. Communications Consultants, Inc.* (July 15, 1983), Lucas App. No. L-83-101, unreported, 1983 WL 6870. Nonetheless, federal cases interpreting the comparable federal provision, Section 6, Article I, United States Constitution, make clear that the expression "legislative privilege" embodies, in addition to substantive immunity from civil and criminal liability, an *evidentiary* privilege against the use of statements, discussions, and debate made in the course of the legislative process. See, generally, 26A Wright & Graham, Federal Practice and Procedure: Evidence, Section 5675. The privilege as embodied in the federal clause is designed to protect legislators against "possible prosecution by an unfriendly executive and conviction by a hostile judiciary." *United States v. Johnson* (1966), 383 U.S. 169, 179, 86 S.Ct. 749, 754, 15 L.Ed.2d 681, 687. This

legislative privilege reflects concern for an effective system of checks and balances among the three branches of government. See, generally, *United States v. Gillock* (1980), 445 U.S. 360, 368–370, 100 S.Ct. 1185, 1191–1192, 63 L.Ed.2d 454, 461–463; *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency* (1979), 440 U.S. 391, 403, 99 S.Ct. 1171, 1178, 59 L.Ed.2d 401, 411–412. The purpose of the Speech or Debate Clause is thus to create an evidentiary privilege for legislators that immunizes them "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland* (1967), 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577, 580. The Speech or Debate Clause privilege against the use of statements made in the legislative process is not a privilege to refuse to disclose; it is, rather, a privilege barring the use of such materials as evidence. *In re Grand Jury Investigation* (C.A.3, 1978), 587 F.2d 589, 596. The vast majority of states have, as does Ohio, a constitutional counterpart to the federal clause, and interpretation of these state provisions is most often guided by federal precedent. *Tenney v. Brandhove* (1951), 341 U.S. 367, 375, 71 S.Ct. 783, 787–788, 95 L.Ed. 1019, 1026, n. 5.[2]

 Both state and federal courts have struggled to define the scope of the privilege, but it is clearly not limited to speeches on the floor of the legislature. *In re Grand Jury Investigation*, 587 F.2d at 594; *United States v. Helstoski* (C.A.3, 1978), 576 F.2d 511, 522. Generally, it has been held that legislative privilege extends to meetings, processes, conversations, and documents that are "an integral part of the deliberative and communicative processes" by which legislators participate in legislative or committee proceedings. *Hutchinson v. Proxmire* (1979), 443 U.S. 111, 126, 99 S.Ct. 2675, 2683–2684, 61 L.Ed.2d 411, 425–426; *Gravel v. United States* (1972), 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583, 602–603. Legislative privilege does not extend, however, to "all conduct related to the legislative process." *United States v. Brewster* (1972), 408 U.S. 501, 515, 92 S.Ct. 2531, 2539, 33 L.Ed.2d 507, 519. In evaluating whether certain activity or material falls within the legislative privilege, a court must determine "whether the activity is essential to the legislature's deliberations or whether permitting inquiry into the activity would threaten its integrity and independence." *Barcelo v. Agosto* (D.P.R.1995), 876 F.Supp. 1332, 1339.

 The above observations on the scope of legislative immunity from discovery, unfortunately, are more suggestive than definitive. No cases have been found which are precisely on all fours with the facts before us in that they would compel, without more, bare disclosure of the identity of lobbyists with

---

**2.** But, see, *State v. Beno* (Wis.1984), 116 Wis.2d 122, 341 N.W.2d 668 (in interpreting provisions of Wisconsin State Constitution providing for legislative privilege, Wisconsin Supreme Court not bound by construction given Speech and Debate Clause of United States Constitution by United States Supreme Court).

whom legislators had met. Nonetheless, we find the following language most instructive: "[T]o the extent that the Speech or Debate Clause creates a Testimonial privilege as well as a Use immunity, it does so only for the purpose of protecting the legislator and those intimately associated with him in the legislative process from the harassment of hostile questioning. It is not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has only a limited toleration for secrecy. * * * The policy against permitting hostile questioning, which justifies the testimonial privilege aspect of Speech or Debate Clause protection, is not implicated in this case." *In re Grand Jury Investigation* at 597. Accordingly, when asked to balance the integrity of the legislative process as weighed against the rights of litigants in the judicial process, we find that the trial court's discovery order is appropriately tailored to serve both. We therefore hold that requiring legislators to divulge the identity of corporate representatives with whom they have had private, off-the-public-record meetings does not represent an infringement upon an "integral part of the deliberative and communicative processes" of the legislative branch, and is not, therefore, violative of legislative privilege.

Since the information compelled to be disclosed by the trial court's order is not within the scope of legislative privilege, the court's discovery order is not a final appealable order under R.C. 2505.02(A) and (B). Appellees' motion to dismiss is accordingly granted, and appellees' motion to place the appeal on the accelerated calendar is rendered moot.

*Appeal dismissed.*

PEGGY BRYANT, J., concurs.

LAZARUS, J., concurs separately.

LAZARUS, Judge., concurring separately.

I concur in the majority opinion and its conclusion that the limited information actually compelled to be disclosed by the trial court's discovery order (*i.e.,* the identities of persons who met with legislators concerning the legislation in question) does not fall within the scope of the legislative privilege. I write separately, however, to emphasize that whether such information is at all relevant to the constitutional issues raised by plaintiffs in this case was not before this court and that this court's decision should not be construed as approval of the trial court's unprecedented determination in this regard.

Plaintiffs brought this action challenging the constitutionality of the legislation under the single-subject rule, the uniformity rule, and municipal home rule provision of the Ohio Constitution and the Takings Clauses of the United States

and Ohio Constitutions. In its decision below, the trial court held that compelling legislators to identify who met with them about the legislation could lead to information that was relevant to the validity of the legislation under the single-subject rule, municipal home rule, and the Takings Clause. According to the court, obtaining information regarding what arguments were made to state legislators or their staff might be relevant in determining the purposes of the legislation, the statewide interest that might be advanced by the legislation, and the possible reasons for including the legislation in the biennial budget Act.

I find the trial court's reasoning in this regard unpersuasive. First, nothing in the case law suggests that inquiry into the legislative intent and purposes of an enactment (beyond the language thereof) is appropriate in determining the validity of the legislation under any of the constitutional provisions raised in this case. See, *e.g., State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 494–501, 715 N.E.2d 1062, 1097–1103 (invalidity of enactment under single-subject rule based solely on analysis of the disparate provisions contained within the enactment); *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted* (1992), 65 Ohio St.3d 242, 602 N.E.2d 1147 (analysis of the validity of city ordinance under municipal home rule provision based solely on language of city ordinance and conflicting state statute); *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8 (whether city action was an unconstitutional taking was dependent upon the effect the city action had on property of the complaining party). Second, even if legislative intent and purpose were factors in the constitutional issues raised herein, nothing in the case law suggests that arguments made *to* the legislature by particular citizens are relevant to this inquiry. As the legislative intent and purpose of a statute cannot be based upon the expressions of any particular legislator, see *Nichols v. Villarreal* (1996), 113 Ohio App.3d 343, 349, 680 N.E.2d 1259, 1263–1264, it logically follows that the intent and purpose of a legislative enactment cannot be gleaned from arguments made to the legislature by any particular citizen. I find the trial court's determination that the information sought was relevant to the claims asserted is fundamentally erroneous.